## STATE OF CONNECTICUT *v.* FREDDIE COX, JR. (AC 16933)

O'Connell, C. J., and Lavery and Spear, Js.

---

Argued June 3—officially released August 25, 1998

*Tara L. Knight*, special public defender, for the appellant (defendant).

*Richard F. Jacobson*, supervisory assistant state's attorney, with whom, on the brief, was *Cornelius P. Kelly*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Freddie Cox, Jr., appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1] On appeal, the defendant claims that (1) the state committed prosecutorial

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

misconduct during the questioning of witnesses and during its closing argument, (2) the trial court made an improper statement to the jury, thereby depriving the defendant of a fair trial and (3) the trial court improperly charged the jury, sua sponte, on consciousness of guilt, which allowed the jury to infer flight on an inadequate factual basis. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In February, 1996, the victim, Yolanda Rudolph, ended an intimate relationship with the defendant and moved in with a girlfriend. On March 23, 1996, the victim was living at 217 Hollister Avenue in Bridgeport. On the night of March 23, 1996, the defendant arrived at the victim's residence uninvited. Although the victim still talked to the defendant by telephone, she had not told the defendant where she resided. To be allowed to enter the victim's building, visitors were required to press a buzzer and identify themselves over an intercom.

After identifying the defendant, the victim let him in. They engaged in conversation for fifteen minutes, and the victim told the defendant she was not going to go back to him and then turned away from him. When she turned back to look at the defendant, he had pulled out a knife. A struggle ensued in which the victim attempted to run upstairs to her apartment, but the defendant prevented her from doing so. In the course of the struggle, the defendant grabbed the victim and made rapid punching motions toward her abdomen with the knife. The victim's screams attracted the attention of her neighbors, who asked over the intercom what was going on. The defendant then ran out of the building.

The victim went upstairs to her apartment and saw that she was cut and bleeding. The police were notified and, after they questioned the victim at the scene of the incident, she was taken by ambulance to Bridgeport

Hospital, where she was treated and released the next day. While at the hospital, the victim was treated by Richard Garvey, a general surgeon. Garvey had previously treated the victim in January for a ruptured spleen.

On the night of the incident, after questioning the victim, police officers from the Bridgeport police department unsuccessfully attempted to locate the defendant. An arrest warrant for the defendant was issued on April 24, 1996. Further attempts to locate the defendant were unsuccessful. The defendant was finally arrested on May 3, 1996, at the office of his probation officer.

The defendant was charged with attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[2] The jury returned a verdict of guilty of the lesser included offense of assault in the second degree. This appeal followed.

I

The defendant first claims that the prosecutor committed prosecutorial misconduct by continually suggesting to the jury, through his questions to witnesses and in his closing argument, that the defendant was responsible for an earlier spleen injury sustained by the victim, thereby depriving the defendant of a fair trial in violation of the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut.

The defendant failed to raise this claim at trial and now seeks review pursuant to *State* v. *Golding*, 213

---

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

Conn. 233, 239–40, 567 A.2d 823 (1989).[3] "[T]o deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . . *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996)." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 356–57, 696 A.2d 944 (1997).

The following facts are relevant for an understanding of the defendant's claim. At trial, the prosecutor asked the victim if the defendant had ever struck her prior to March 23, 1996. The trial court sustained the defendant's objection to this question. Later, the prosecutor questioned Garvey about the victim's prior spleen injury and asked the defendant on cross-examination whether he had ever struck the victim prior to March 23, 1996.

---

[3] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." (Citation omitted; internal quotation marks omitted.) *State* v. *Santos*, 41 Conn. App. 361, 364, 675 A.2d 930, cert. denied, 237 Conn. 932, 677 A.2d 1374 (1996).

The defendant answered no. The defendant made no objection to either of these questions.

The defendant also argues that the state made several improper references to the victim's previous injury in its closing argument. Again, the defendant made no objection and failed to ask for a curative instruction. The defendant, therefore, presumably did not regard those remarks or the questions asked as seriously prejudicial at trial. See *State* v. *Correa*, supra, 241 Conn. 358; *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993); *State* v. *Negron*, 221 Conn. 315, 330, 603 A.2d 1138 (1992).

"The defendant cannot, by identifying isolated remarks, set forth a claim of constitutional magnitude. *State* v. *Chance*, 236 Conn. 31, 64, 671 A.2d 323 (1996); *State* v. *Atkinson*, supra, 235 Conn. 770; *State* v. *Watlington*, 216 Conn. 188, 193, 579 A.2d 490 (1990); *State* v. *Smith*, 209 Conn. 423, 428, 551 A.2d 742 (1988)." *State* v. *Correa*, supra, 241 Conn. 358. The defendant has failed to establish a sufficient pattern of misconduct pervading throughout the trial that was so blatantly egregious that it infringed on his right to a fair trial. The defendant's claim is therefore not reviewable under *State* v. *Golding*, supra, 213 Conn. 239–40.

II

The defendant's second claim is that the trial court made an improper statement during its instructions to the jury, depriving the defendant of his constitutional right to a fair trial. Specifically, the defendant claims that the trial court instructed the jury that there was no evidence of cocaine abuse by the complaining witness. The defendant argues that this statement amounted to a factual determination by the trial court that impermissibly invaded the fact-finding province of the jury. We disagree.

During the cross-examination of Garvey, defense counsel asked the following question: "The report indicates there's a secondary diagnosis test that there was cocaine abuse. Did that cocaine abuse in any way affect your treatment of her stab wound at all?" Garvey answered, "No." The report that defense counsel referred to was the hospital report of the victim for the treatment of her stab wound. The report was not entered into evidence. Later, on direct examination of the defendant, defense counsel asked: "This particular night, whose house was she at?" The defendant answered: "[The victim] was over some man's house. It was like a—it looked like a crack house to me." No further mention of the hospital report or the defendant's description of the victim's home as a crack house was made until the defendant's closing argument.

The trial court made the following statement during its instructions to the jury. "Now, I'm going to bring a subject up to you, people may not like it, here and there and everywhere. This woman was on the stand, the doctor was on the stand, he was cross-examined and a suggestion was made to him about a secondary condition in regard to the cause of the injury or her condition. Cocaine. And then you had a remark by the defense during the course of the defendant's testimony about a crack house. You accept both of those for what they are. They're someone else's opinion, but you have no cold, hard facts that this woman was involved in any use of cocaine. And the suggestion of it does not make it true and they're not here for that. So, don't penalize her because of some argument or ingenuity of placing it here before you. It doesn't belong. Could it be here? Yes. If it was true, bring in the evidence. That wasn't done. Understand that." The defendant excepted to the court's charge.

"Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . In

a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . The function of the court in a criminal trial is to conduct a fair and impartial proceeding. . . . The role of the [t]rial [j]udge is neither that of automaton nor advocate . . . nor is a judge merely an umpire in a forensic encounter but [h]e is a minister of justice and in whatever he does . . . the trial judge should be cautious and circumspect in his language and conduct.

"Furthermore, [d]ue process requires that there should be no [statement during the trial] that appears to reject a defendant's credibility and implies judicial support of a prosecution witness' testimony. . . . The influence of the trial judge on the jury is necessarily and properly of great weight . . . and jurors are ever watchful of the words that fall from him. . . . These admonitions and cautions are prompted by the truism that a jury has a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended. . . . The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's. . . . A fine line separates proper and improper judicial conduct and the judge must strive to appear impartial and detached. . . . Quoting *Commonwealth* v. *Myma*, 278 Pa. 505, 508, 123 A. 486 (1924), our Supreme Court stated: The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. . . . This court has said that [j]udges

in this state . . . are given wide latitude to comment fairly and reasonably upon evidence received at trial, but the court must refrain from making improper remarks which are indicative of favor or condemnation. . . . Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must always be cautious and circumspect in his language and conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Pharr*, 44 Conn. App. 561, 568–71, 691 A.2d 1081 (1997).

The defendant argues that the trial court improperly bolstered the credibility of the state's key witness. The defendant claims that evidence of cocaine abuse on the part of the victim could have had a direct bearing on her credibility as well as her ability to perceive and recall events.

In this case, there was no evidence or testimony introduced that established a link between abuse of cocaine by the victim and her ability to perceive or recall events. Further, there was no evidence indicating that the victim was under the influence of cocaine at the time of the event such that would have affected her ability to perceive and recall events. The defendant attempts to place great weight on the fact that there was a diagnostic test performed on the victim on the night of the stabbing that resulted in a secondary diagnosis of substance abuse. There is no evidence, however, indicating what the parameters of this diagnostic test were. Further, no evidence establishes whether this substance abuse was on the night of March 23, 1996, or some time prior. The defendant asked no follow up questions of Garvey as to the meaning of this diagnostic test. The defendant also had the opportunity to ask the victim on cross-examination whether she was under the influence of cocaine or crack on the day of the stabbing, but failed to do so.

On the basis of our review of the record and transcript in this case, we cannot conclude that the trial court departed from the standards governing the orderly and impartial conduct of a criminal trial. The trial court's statement did not cross that fine line that separates proper and improper judicial conduct. The credibility of the victim was not bolstered by the trial court's statement. The result of the trial court's statement was to place the testimony concerning the hospital report in the proper context and to instruct the jury that while substance abuse could have been an issue in this case, it was not because there was no evidence of any relevance produced to make that connection.

### III

The defendant's final claim is that the trial court's jury instruction concerning consciousness of guilt was not supported by the evidence.[4] The defendant claims that this instruction allowed the jury to infer flight from an inadequate basis.[5]

---

[4] The consciousness of guilt instruction was not requested by the state. It came as no surprise, however, to the defendant. In addition to flight evidence in its case-in-chief, the state in rebuttal, and over the defendant's objection, introduced additional consciousness of guilt evidence. The state also argued flight and consciousness of guilt to the jury.

[5] The trial court's instruction on consciousness of guilt was as follows: "You'll recall evidence that [was] given in the course of the trial in the state's case when the woman indicated that somebody yelled through the intercom with, what's going on out there and so forth. In her view of the events, the events ended and she came—left and went upstairs somewhere. And he went out and then the police came eventually. They went to Union. They went to Stratford Avenue. They were looking and he was nowhere to be found. In the general sense, I'm telling you that there's a theory in law that says there can be a consciousness of guilt by flight. If someone flees immediately from a scene, and you can follow that a little further by saying that they couldn't locate him after the arrest warrant was issued and the detective that came in was down at 85 Union looking for him, and eventually you heard the testimony as to what occurred.

"So flight, when unexplained, tends to prove circumstances of guilt. The flight of a person accused of a crime is a circumstance which, when considered together with all the facts of the case, may justify a finding of the defendant's guilt. However, flight, if shown, is not conclusive. It is to be

At trial, Officer Anthony Mandolfo testified that he arrived at the scene of the stabbing at around 1 a.m. His partner asked the victim who had stabbed her, and the victim identified the defendant and gave police the defendant's address, telephone number and the area he frequented. Mandolfo further testified that they attempted to contact the defendant by telephone that night, but his telephone was out of service. They also went to the defendant's address that night, but he was not there. Nor was he at an area that he often frequented. Detective Robert Sapiro testified that he obtained an arrest warrant and unsuccessfully attempted to locate the defendant at his apartment, where he talked to a woman who claimed to be the defendant's mother.

The defendant's probation officer, Carla Scinto, testified that on March 26, 1996, three days after the stabbing incident, the defendant attended a scheduled visit with her. At that meeting, the defendant made no mention of the incident with the victim, but indicated that he had broken up with her. In addition, the defendant requested an out-of-state transfer of his probation to North Carolina. Scinto stated that the defendant made two more visits to her on April 24, 1996, and May 3, 1996. Further, Scinto stated that the defendant did not make arrangements with her to turn himself in to the police, and on the May 3, 1996 visit, she notified the detective bureau that the defendant was with her. On cross-examination, Scinto stated that transfer requests by probationers are routine.

given the weight to which you, the jury, think it is entitled under the circumstances. You will also consider any explanation you may have heard concerning that flight and consider that, as well, as rebutting the consciousness by flight charge. If you find that there was a fleeing in this case from the charge, you may consider [that] as evidence of his consciousness of guilt. If you find he was not fleeing from this charge, you should not consider it as evidence of a consciousness of guilt. It is up to you to give the evidence the weight to which you think it is entitled."

The defendant testified that he personally arranged to turn himself into the police. He also testified that he visited the victim in the hospital after the stabbing on March 23, 1996.

Our Supreme Court has stated: "Flight, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Holloway*, 209 Conn. 636, 651–52, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). " 'The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous.' *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986)." *State* v. *Freeney*, 228 Conn. 582, 594, 637 A.2d 1088 (1994).

"It is relevant to show the conduct of an accused, as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. *State* v. *Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984). . . . The court must weigh the probative value against any prejudicial effect on the defendant." (Citations omitted.) *State* v. *Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986). "Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Perry*, 48

Conn. App. 193, 201, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

On the basis of our review of the transcripts and evidence in this case, we cannot say that the trial court abused its discretion in determining that the evidence of flight was more probative than prejudicial or that it appears that an injustice has been done. The admitted evidence was sufficient to support the consciousness of guilt instruction. The jury was properly instructed on the factors to consider in determining whether to infer a consciousness of guilt on the evidence before it and that it was for the jury to determine the weight to be accorded to such evidence in making its determination. We conclude that the trial court's charge on consciousness of guilt was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.