STATE OF CONNECTICUT *v.* JAMEL BEALL
(AC 18469)

Foti, Mihalakos and Healey, Js.

Argued October 17, 2000—officially released January 23, 2001

*Susan M. Hankins*, assistant public defender, with whom were *Stephanie J. Sweeney*, certified legal intern, and, on the brief, *Janice Wolf*, certified legal intern, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *Gary Nicholson*, senior assistant state's attorney,

and *Eileen McCarthy Geel,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Jamel Beall, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1)[1] and carrying a pistol without a permit in violation of General Statutes § 29-35,[2] and

---

[1] General Statutes § 53a-59 provides: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person; or (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm.

"(b) Assault in the first degree is a class B felony provided (1) any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court and (2) any person found guilty under subsection (a) shall be sentenced to a term of imprisonment of which ten years of the sentence imposed may not be suspended or reduced by the court if the victim of the offense is a person under ten years of age."

[2] General Statutes § 29-35 provides: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of

from the sentence imposed by the court in a separately charged part B information for the use of a firearm in the commission of a felony in violation of General Statutes § 53-202k.[3] The court sentenced the defendant to a term of eighteen years, suspended after eight years, with three years of probation on the assault charge, and to a concurrent three year term on the weapons charge. Following the court's action on the part B information, the court sentenced the defendant to the mandatory five year consecutive sentence for violating § 53-202k. Thus, the court sentenced the defendant to a total effective term of eighteen years imprisonment, suspended after thirteen years, with three years probation.

The defendant claims that the court improperly (1) imposed its sentence pursuant to § 53-202k without submitting the necessary factual determination to the jury,

sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33.

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

[3] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

(2) limited cross-examination, (3) allowed venire-persons, who would later become jurors, to view an indoctrination film and (4) refused to disclose mental health records allegedly pertaining to the victim's veracity. The defendant also claims that prosecutorial misconduct occurred during closing argument to the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 15, 1996, the victim, Derrick Harris, and his friend, Tito Wilson, decided to go to downtown New Haven to purchase some clothes. Harris and Wilson met with several of their friends, and went to Winchester Street to take a bus. Harris went into the Sweet Shop, a store on Winchester Street, where he purchased soda and made change for the bus trip. After making his purchase, Harris left the Sweet Shop and drank his soda as he stood on the sidewalk in front of the store. While there, he noticed three individuals on minibikes traveling on the street toward him. As the individuals on the minibikes came within approximately twenty feet of Harris, one of them fired four shots from a gun at him. One of the shots struck Harris in the chest, causing permanent paralysis from the location of the wound throughout the lower part of his body.

Harris identified the defendant as the person who shot him.[4] Harris further testified that the two other individuals on the minibikes did not fire at him. Additional facts will be discussed where relevant to the issues on appeal.

## I

The defendant first claims that he was denied his right to trial by jury under § 53-202k, and the state

---

[4] Harris testified that he knew the defendant by the name Mellywack. He further testified that he had seen the defendant around the neighborhood twice a week on average for a couple of years previous to the shooting, and that he and the defendant had an argument about a month prior to the shooting.

and federal constitutions,[5] because the court failed to submit to the jury for its determination, beyond a reasonable doubt, the factual question of whether he had used a firearm in the commission of a class A, B or C felony. We disagree.

A jury, and not the court, must determine whether a defendant used a firearm in the commission of a class A, B or C felony for purposes of § 53-202k. *State* v. *Velasco*, 253 Conn. 210, 214, 751 A.2d 800 (2000). When there is no question that the jury's finding necessarily satisfied the two requirements of § 53-202k, the court's failure to instruct the jury regarding the elements of § 53-202k is harmless beyond a reasonable doubt.[6] *State* v. *Montgomery*, 254 Conn. 694, 737–38, 759 A.2d 995 (2000). The jury's finding that the defendant was guilty of having committed assault in the first degree, a class B felony, necessarily satisfied the first requirement. The use of a firearm is not always an element of the crime of assault in the first degree, and the information in this case did not expressly state that the "deadly weapon" used to cause the serious physical injury was a firearm. The evidence presented at trial was that the victim was shot in the chest and paralyzed below the site of the wound. The defendant did not dispute that evidence. His defense was that he was not the shooter.

[5] The defendant cites the fifth, sixth and fourteenth amendments to the United States constitution, and article first, §§ 8, 9 and 19, of the constitution of Connecticut.

[6] The defendant argues that the court's failure to instruct the jury on the requirements of § 53-202k is not amenable to harmless error analysis and that our Supreme Court improperly applied that analysis in *State* v. *Montgomery*, 254 Conn. 694, 759 A.2d 995 (2000). We see no merit in his argument that this error requires automatic reversal and can never be found harmless. See *State* v. *Velasco*, supra, 253 Conn. 230–36; see also *State* v. *Montgomery*, supra, 735, 737–38; *State* v. *Price*, 61 Conn. App. 417, 423–24, 767 A.2d 107 (2001). Furthermore, even if we believed that this argument had merit, it is axiomatic that we are bound by our Supreme Court precedent. See *State* v. *Otero*, 49 Conn. App. 459, 468 n.9, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998).

The sole evidence, therefore, of the assault in the first degree, was that it was committed with a firearm. The element found by the court rather than by the jury, i.e., that the class B felony was committed with a firearm, was uncontested and supported by overwhelming evidence; the court's failure to instruct on that element of § 53-202k therefore constituted harmless error. See id., 738. As in *Montgomery*, albeit where the charge was murder, because the defendant in this case did not dispute that the victim suffered serious physical injury by means of being shot by a firearm, and because the jury found beyond a reasonable doubt that the defendant was guilty of assault in the first degree, a class B felony, the court's failure to instruct the jury regarding the elements of § 53-202k was harmless beyond a reasonable doubt.

## II

The defendant next claims that the court violated his constitutional right of confrontation by improperly limiting his cross-examination of the state's key witness, Harris. We review this claim because the defendant preserved it at trial.

The facts relating to this claim and necessary for the resolution of the issue are as follows. During the trial, the defendant sought to cross-examine Harris regarding his conviction of certain crimes. Specifically, the defendant sought to elicit information regarding Harris' conviction for burglary in the second degree and an escape charge from June, 1996. The defendant conceded that he did not have information about the facts concerning the burglary charge that would implicate Harris' veracity. The defendant claimed, however, that he had information that Harris escaped from the Long Lane School by failing to return to the institution after the expiration of a pass that it had granted him. Although the court limited the defendant's ability to cross-examine Harris

regarding those crimes, the court allowed the defendant to cross-examine Harris regarding, inter alia, his incarceration at Long Lane School and his contact with the defendant during that time, as well as his arrest for possession of a stolen car.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Andrews*, 248 Conn. 1, 11–12, 726 A.2d 104 (1999).

"Although it is within the trial court's discretion to determine the extent of cross-examination . . . the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment." *State* v. *Colton*, 227 Conn. 231, 249, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "The right of confrontation is preserved [however] if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability

of the witness." (Internal quotation marks omitted.) Id. "In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

While "[t]he denial of *all* meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause"; (emphasis added) *State* v. *Roma*, 199 Conn. 110, 116, 505 A.2d 717 (1986); that is not the situation in this case. The defendant's counsel questioned Harris extensively, not only about the incident itself, but also about his truancy, his commitment as a juvenile delinquent at Long Lane School and his possession of a stolen car. The court limited the evidence admitted for impeachment purposes to that involving veracity. The defendant was unable to demonstrate that any evidence relating to the burglary or escape charges implicated Harris' veracity.

The defendant argues that the court should have allowed him to cross-examine Harris regarding the burglary and escape, regardless of whether he could establish an association with the lack of veracity, because cross-examination to show motive, bias, interest and prejudice is a matter of right. While it is correct that cross-examination tending to show those conditions is a matter of right that may not be unduly restricted; *State* v. *Lubesky*, 195 Conn. 475, 482, 488 A.2d 1239 (1985); it is the party offering the testimony who has the burden of establishing its relevancy. *State* v. *Andrews*, supra, 248 Conn. 12. The defendant did not proffer a sufficient reason to establish such a basis.

Under the circumstances of this case, we conclude that the court did not infringe on the defendant's right to cross-examine Harris. The court did not violate the defendant's confrontation right, and it did not abuse its discretion in precluding cross-examination regarding the burglary or escape charges.

## III

The defendant next claims that the court improperly permitted the venirepersons, from which the jury was selected, to view an official juror indoctrination film that exposed them to prejudicial comments, thereby violating his right to an impartial jury and a fair trial. We disagree.

Prior to jury selection and voir dire, the defendant requested that the court preclude prospective jurors from viewing the official juror indoctrination videotape titled, "Judge and Jury: Partners in Justice," which is shown to prospective jurors in the jury assembly room. In denying the defendant's motion, the court stated: "Counsel, I did have this issue before me in Waterbury. I viewed the videotape you're talking about on more than one occasion. Specifically, we all viewed it during the hearing. The jury court administrator came down and testified. I denied the motion by [counsel] for the reason that (1) most if not all criminal judges do give certain preliminary remarks to the panel that comes down to them for their respective case. But aside from that, during the voir dire, any taint that you may feel has gone to those prospective jurors, you will take care of it during voir dire. They read newspapers, they watch the six o'clock news. I mean, believe me, what we see on the six o'clock news may be ten times or more than that worse than what [the judge in the videotape] says. He's making generic comments about society in general, which I think can be cured by your voir dire questioning to see if jurors in fact of that mind would prejudice

your client; you can ask for the juror to be excused for cause or to exercise a peremptory challenge. For those reasons, sir, your motion is going to be denied, and you have an exception to that."

A preinstruction, in this case in the form of an indoctrination film, is permissible to provide preliminary instruction to prospective jurors. See *State* v. *Lewis*, 220 Conn. 602, 614, 600 A.2d 1330 (1991). The final charge, however, supersedes and usually overrides earlier comments, particularly if the closing charge is temporally distant from the challenged preinstruction. See *State* v. *DelVecchio*, 191 Conn. 412, 422, 464 A.2d 813 (1983). The true issue raised is whether the preinstruction affected the fairness or integrity of the proceedings. *State* v. *Marra*, 222 Conn. 506, 537, 610 A.2d 1113 (1992).

The defendant was given full opportunity during individual voir dire to delve into any impact the film might have had on prospective jurors and to establish through their responses if the defendant's rights were in any way prejudiced. The defendant failed to establish a record demonstrating that any individual prospective juror, or the entire panel, should have been excused, given the circumstances of this particular case, because of preinstruction prejudice adversely affecting his constitutional rights. We conclude that the defendant did not demonstrate that the indoctrination film unfairly biased any prospective jurors and that the court properly permitted the venirepersons to view the film.

## IV

The defendant next claims that comments made by the prosecutor during closing argument violated his right to a fair trial. This claim was not preserved,[7] and

---

[7] The defendant did not object and failed to ask for any curative instruction with regard to this issue. "The defendant, therefore, presumably did not regard those remarks . . . as seriously prejudicial at trial." *State* v. *Cox*, 50 Conn. App. 175, 180, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999).

the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8]

At the end of the state's second closing argument, the prosecutor stated: "[C]ertainly the state would not compound the tragedy by letting somebody who is responsible for that serious permanent injury walk out of this courtroom. Now, it's your responsibility as jurors in this case to enforce the law. You know, the police, it is their job to investigate crime such as this, it's their job to arrest people that they suspect of crimes. It's Judge Hadden's job to preside over the trial, to see to it that everyone involved in the case gets a fair trial. And it's the state's attorney's job—again, the state's attorney's office doesn't enforce the law. It's the state's attorney's job to make sure that the trial is a fair trial, and the evidence is presented for your consideration so that you can render a fair and impartial verdict in this case after you have considered all of the admissible evidence.

"But, again, in the final analysis, it's up to you to make that decision; it's not up to me, it's not up to Judge Hadden, it's not up to defense counsel, it's not up to the New Haven police department. If you are not willing to enforce the law as an arm of the court, then unfortunately, then, the law is not going to be enforced at all."

---

[8] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Shinn*, 47 Conn. App. 401, 409, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998).

We often have stated our standard of review of a claim of prosecutorial misconduct that allegedly results in an unfair trial. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout trial . . . .

"In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant. . . . In doing so, we have focused on several factors, [i]ncluded among those factors are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Mod-*

*ica,* supra, 1181; *Harris* v. *United States,* 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer,* supra, 654; and the strength of the state's case. See *United States* v. *Modica,* supra, 1181; *State* v. *Couture,* supra, 564; see also *State* v. *Glenn,* 194 Conn. 483, 492, 481 A.2d 741 (1984). . . . *State* v. *Alexander,* 50 Conn. App. 242, 255–56, 718 A.2d 66 (1998), rev'd on other grounds, 254 Conn. 290, 755 A.2d 868 (2000).

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citations omitted; internal quotation marks omitted.) *State* v. *Chasse,* 51 Conn. App. 345, 355–56, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

Prosecutorial misconduct can occur in the course of closing argument. *State* v. *Atkinson,* 235 Conn. 748, 768–69, 670 A.2d 276 (1996). Counsel, in addressing the jury, must be allowed a generous latitude in argument, including the zeal of counsel in the heat of argument. *State* v. *Andrews,* supra, 248 Conn. 19. Ultimately, the proper scope of closing argument lies within the sound discretion of the trial court. *State* v. *Copas,* 252 Conn. 318, 337, 746 A.2d 761 (2000). We review the allegedly improper comments in the context of the entire trial. *State* v. *Andrews,* supra, 19.

The defendant satisfies the first two prongs of *Golding* because an adequate record exists to review his claim and he alleges a constitutional violation. The defendant, however, cannot prevail under the third prong because he cannot demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial. The record discloses that the prosecutor

made isolated comments and did not engage in a pattern of egregious conduct. The comments do not rise to the level of misconduct; they describe the respective roles of the parties in the process, perhaps somewhat over-zealously in the comment that if the jury was "not will-ing to enforce the law as an arm of the court, then unfortunately, then, the law is not going to be enforced at all." We conclude, therefore, that the prosecutor's argument did not infringe on the defendant's constitu-tional right to a fair trial.

## V

The defendant requests that we review certain sealed, privileged records not disclosed to him at trial. The court reviewed certain of the victim's confidential psy-chiatric or psychological records, and the court released some of those records and found that others were not relevant. Thereafter, the court marked the records as exhibits B and C, and ordered them sealed. The court's determination not to disclose the contents of the records to the defendant because they contained no relevant material was within the court's discretion, and our standard of review is whether the court abused that discretion. *State* v. *Rosado*, 52 Conn. App. 408, 416, 726 A.2d 1177 (1999).

Our in camera review of the records; see *State* v. *Olah*, 60 Conn. App. 350, 353–56, 759 A.2d 548 (2000); see also *State* v. *Crosswell*, 223 Conn. 243, 270, 612 A.2d 1174 (1992); leads us to conclude that the court, under the circumstances of this case, did not abuse its discre-tion by not releasing the material in question.

The judgment is affirmed.

In this opinion the other judges concurred.