STATE OF CONNECTICUT *v.* VICTOR JORDAN
(AC 20540)

Foti, Mihalakos and O'Connell, Js.

Argued December 14, 2000—officially released July 3, 2001

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Richard F. Jacobson*, special assistant state's attorney, with whom, on the brief, was *Robert M. Brennan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1)[1] and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).[2] The jury found the defendant not guilty of criminal possession of a pistol or revolver. The defendant claims that the trial court improperly (1) denied his motion to dismiss the assault charge, (2) denied his motion to dismiss the unlawful restraint charge, (3) deprived him of a fair trial because of prosecutorial misconduct and (4) made an improper evidentiary ruling. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim lived together in a second floor apartment with the victim's three children and her sixteen year old cousin. The victim's parents lived on the first floor with her uncle and her twenty-one year old sister. On the morning of February 14,

---

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[2] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

1999, the defendant and the victim engaged in an argument that escalated when the victim attempted to go downstairs to her mother's apartment. As she started to leave, the defendant pulled her back up the stairs by her hair and then pinned her shoulders to the bed so that she could not get up. She called for her mother, who arrived shouting, "Enough is enough." When the victim's mother went back downstairs, she told her husband that "[h]e's going to kill her. He's going to hit her in the head with the juice bottle."

During the altercation, the defendant struck the victim in the face and threatened that if she called the police she would pay for it, that he would kill the police, burn down the house and that there would be bloodshed. Throughout the altercation, the victim cried and feared physical harm if she called the police. The defendant hit the victim with a juice bottle, and other occupants of the building heard and saw the victim crying. This incident was a continuation of four months of physical abuse. Because the family feared further violence if the police were called, under a guise of leaving for work, the victim's uncle left the house and called the police from a corner telephone booth. When the police arrived at the house, they observed that the victim's hair was in disarray, that she was nervous and that she had a red mark on her face.

I

The defendant first claims that there was insufficient evidence to support his conviction of assault in the third degree and, therefore, the trial court improperly failed to dismiss that count.[3]

---

[3] Although the defendant filed several motions to dismiss, he did not file such a motion addressed to the assault count. Despite that oversight, the trial court gratuitously considered and denied the "motion," although referring to it as a motion to acquit. Because the defendant includes this ruling as an issue on appeal, we will consider it.

We determine whether the evidence is sufficient to support a jury verdict by employing a familiar two part test. "We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 132–33, 646 A.2d 169 (1994).

"It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury. We do not sit as a seventh juror empowered to cast an overriding vote over the jury of six that actually heard the case." *State* v. *Brunori*, 22 Conn. App. 431, 434–35, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). In determining whether the evidence would support a finding of guilt beyond a reasonable doubt, the law "does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Jackson* v. *Virginia*, 443 U.S.

307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State* v. *Scielzo*, 190 Conn. 191, 197, 460 A.2d 951 (1983).

A person is guilty of assault in the third degree in violation of § 53a-61 when he causes "physical injury" to the victim. Physical injury is defined as "impairment of physical condition or pain . . . ." General Statutes § 53a-3 (3); *State* v. *Henderson*, 37 Conn. App. 733, 743, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995). In this case, the evidence showed that the defendant struck the victim in the face, grabbed her by the shirt, pinned her shoulders to the bed, wrapped her up like a rubber band and pulled her hair. The jury reasonably could have inferred that these acts caused pain to the victim, and the defendant's intent to cause that pain could have been inferred from his conduct and the surrounding circumstances. *State* v. *Smith*, 35 Conn. App. 51, 63–66, 644 A.2d 923 (1994). Applying the two part sufficiency test, we conclude that there was sufficient evidence to support the defendant's conviction of assault in the third degree.

## II

The defendant next argues that there was insufficient evidence to support his conviction of unlawful restraint in the first degree and, therefore, the trial court improperly denied his motion to dismiss that count. Section 53a-95 (a) provides that "[a] person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty . . . by confining him . . . in the place where the restriction commences . . . ." General Statutes § 53a-91 (1).

The defendant concedes that he restrained the victim but argues that the evidence does not support a finding

that it exposed her to a substantial risk of physical injury. He contends that, at most, he could be guilty only of unlawful restraint in the second degree, which does not require exposure to a substantial risk of physical injury.[4]

To convict a defendant of unlawful restraint in the first degree, no actual physical harm must be demonstrated; the state need only prove that the defendant exposed the victim to a substantial risk of physical injury. *State* v. *Fields*, 31 Conn. App. 312, 331, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993). The question before us is whether, under the facts of this case, *any* rational jury could have found that the defendant exposed the victim to a substantial risk of injury. We conclude that a rational jury could have so found.

The jury reasonably could have found that the defendant not only exposed the victim to physical injury, but, by its guilty verdict of assault in the third degree, also that he *actually* had inflicted physical injury on her.[5] This jury finding of actual physical injury encompasses the statutory requirement of mere exposure to physical injury necessary to obtain a conviction of unlawful restraint in the first degree. Both prongs of the two part test, referred to in part I of this opinion, are satisfied. Accordingly, we conclude that there was sufficient evidence to support a conviction of unlawful restraint in the first degree.

### III

The defendant next claims that he was deprived of a fair trial by a pattern of prosecutorial misconduct. The following additional facts are necessary for the disposition of this claim. At trial, the defendant had

---

[4] General Statutes § 53a-96 (a) provides: "A person is guilty of unlawful restraint in the second degree when he restrains another person."

[5] See part I of this opinion.

been charged with, among other crimes, criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c.[6] An element of this crime is that the defendant previously had been convicted of a felony.[7] The state and the defendant stipulated that the jury could be informed that the defendant had been convicted of a class B felony.[8] Pursuant to the stipulation, the court instructed the jury that the defendant had been convicted of a class B felony but did not inform the jury of the nature of the felony. During closing argument, the prosecutor referred to the defendant as "a guy who has killed somebody." This apparently was a reference to the defendant's prior manslaughter conviction.[9] The defendant now argues that the statement

---

[6] General Statutes § 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver . . . and (1) has been convicted of a felony . . . ."

[7] In another case, the defendant apparently had been charged with murder but was convicted of the lesser included offense of manslaughter in the first degree.

[8] The parties stipulated a follows:

"[Assistant State's Attorney]: I believe the defense and the state will enter into a stipulation so the state does not have to go through the trouble of bringing in people to testify that the defendant was convicted of a B felony prior to 1991.

"The Court: [Defense Counsel]?

"[Defense Counsel]: No objection, Your Honor. That's one of the elements of the weapons charge, and the defense agrees to that stipulation.

"The Court: All right then. That is evidence for the jury to consider. It's a stipulation by the parties that the defendant, in fact, had a previous conviction for a felony—B felony. And, I'll explain the significance of that when I instruct you on the law."

[9] The following exchange took place during cross-examination of a defense witness:

"[Assistant State's Attorney]: Why don't you tell us how you knew him in '89?

"[Witness]: *Because that family had me go against [the defendant] on a murder case?*

"Q. You testified against him?

"A. Yes.

"Q. He get convicted?

"A. I'm not sure.

was improper because the court made it clear that the jury was not supposed to know the nature of the class B felony. The defendant, however, failed to object when the remark was made and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 578–79, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000); see also *State* v. *Peterson*, 51 Conn. App. 645, 654, 725 A.2d 333, cert. denied, 248 Conn. 905, 731 A.2d 310 (1999).

In the present case, we focus on the third prong, i.e., that the alleged constitutional violation clearly exists

"Q. So, you testified against him in a murder case?
"A. Yes. . . .

\* \* \*

"Q. And, you spoke earlier about the fact that you testified against the defendant in a homicide trial, correct?
"A. Correct.
"Q. You were the principal eyewitness against him?

\* \* \*

"A. I was not an eyewitness. I was a witness." (Emphasis added.)

and clearly deprived the defendant of a fair trial. "[T]o deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . ." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 356–57, 696 A.2d 944 (1997); *State* v. *Beall*, 61 Conn. App. 430, 442, 769 A.2d 708, cert. denied, 255 Conn. 954, 772 A.2d 152 (2001); see *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

The defendant's reliance on *State* v. *Butler*, 55 Conn. App. 502, 739 A.2d 732 (1999), aff'd, 255 Conn. 828, 769 A.2d 697 (2001), is misplaced. In *Butler*, the defendant moved for a mistrial immediately after the improper remarks were made, and the trial court lambasted the state's attorney in exceptionally harsh language.[10] After a lunch recess, the defendant filed a written motion for dismissal, mistrial, surrebuttal time or a corrective instruction. Id., 506. "Despite stating that the prosecu-

---

[10] In *Butler*, the trial court indicated its strong disapproval of the state's attorney's remarks immediately after the court had excused the jury in the following words: "That is absolutely some of the most impermissible argument I have heard. . . . I am so upset about this, and I am going to think about it during the lunch hour, but you might think about what I might send to the New York District Attorney." *State* v. *Butler*, supra, 55 Conn. App. 506. A footnote in the *Butler* decision indicates that "[t]his was the prosecutor's final case before going to work in the district attorney's office in Brooklyn, New York." (Internal quotation marks omitted.) Id., 506 n.4.

tor's comment was prejudicial, improper and unprofessional, the court denied the defendant's motions for dismissal and a mistrial, but granted the request for a curative instruction." Id. Those strong comments from the court and the defendant's objection distinguish *Butler* from the present case in which neither the defendant nor the court objected to or commented on the state's argument, nor did the defendant request a curative instruction. We may infer that in the atmosphere of the trial the defendant did not regard the remarks as seriously prejudicial. See *State* v. *Cox*, 50 Conn. App. 175, 180, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999).

The defendant argues that the court had a duty to give a cautionary instruction sua sponte. In *State* v. *Wragg*, 61 Conn. App. 394, 399, 764 A.2d 216 (2001), we discussed sua sponte jury instructions. We concluded that "when opposing counsel does not object to evidence, it is inappropriate for the trial court to assume the role of advocate and decide that the evidence should be stricken. . . . The court cannot determine if counsel has elected not to object to the evidence for strategy reasons. . . . Experienced litigators utilize the trial technique of not objecting to inadmissible evidence to avoid highlighting it in the minds of the jury. Such court involvement might interfere with defense counsel's tactical decision to avoid highlighting the testimony. When subsequent events reveal that it was an imprudent choice, however, the defendant is not entitled to turn the clock back and have [the appellate court] reverse the judgment because the trial court did not, sua sponte, strike the testimony and give the jury a cautionary instruction. No limiting instruction was given at the time [of the offending] remark and none was required because none was requested." (Citations omitted; internal quotation marks omitted.) Id. We discern no distinction, for this purpose, between offensive testimony and

an inappropriate comment in closing argument and conclude that the court had no duty to give a sua sponte correcting instruction.

The burden is on the defendant to show that the state's attorney's remarks were prejudicial in light of the entire proceeding. *State* v. *Butler,* supra, 55 Conn. App. 508. In this case, the jury did not learn something new. It already had heard twice from a defense witness on cross-examination that the defendant had been involved in a murder case.[11] Closing argument is properly based on evidence presented during trial. Id., 521 (*Foti, J.,* dissenting). Because the witness had placed the defendant's previous involvement in a homicide prosecution into evidence, we cannot conclude that the defendant has carried his burden of showing that the state's attorney's remark was prejudicial. Even if we concluded that the state's attorney's remark was improper, it did not infect the entire trial with unfairness so as to make the resulting conviction a denial of due process.

We conclude that there was no pattern of prosecutorial misconduct and that the prosecutor's sole, isolated comment did not deprive the defendant of a fair trial. The defendant has not satisfied the third prong of *Golding* and, therefore, he cannot prevail on this claim.

## IV

The defendant's final claim is that the court made an improper evidentiary ruling when it allowed the state to inquire as to whether he previously had hit the victim. On appeal, the state contends that the question and answer were admissible as tending to show whether the victim was in fact exposed to a substantial risk of physical injury.

[11] See footnote 9.

A trial court's ruling on the admissibility of evidence is entitled to great deference. *State* v. *Valentine*, 255 Conn. 61, 69, 762 A.2d 1278 (2000). "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moveover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of a substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Fisher*, 57 Conn. App. 371, 375, 748 A.2d 377, cert. denied, 253 Conn. 914, 754 A.2d 163 (2000). There is no merit to the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.