******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SARA E. VANDEUSEN *v.* COMMISSIONER
OF CORRECTION
(AC 43895)

Prescott, Alexander and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted of several crimes in connection
with a shooting, sought a writ of habeas corpus, claiming, inter alia,
that her trial counsel rendered ineffective assistance when he failed to
request that the trial court instruct the jury regarding the elements
of the applicable sentence enhancement statute (§ 53-202k) and the
statutory (§ 53a-3 (19)) definition of firearm in § 53-202k with respect
to the charge of accessory to attempt to commit assault in the first
degree. The petitioner and another individual, K, had driven to the
residence of a woman, J, where K fired a handgun at the residence
before he and the petitioner drove away. The trial court imposed a five
year sentence enhancement on the petitioner's conviction of being an
accessory to an attempt to commit assault in the first degree. The habeas
court denied the habeas petition, concluding that the jury unanimously
had determined that the state proved each element of § 53-202k and
that any error caused by the trial court's failure to instruct the jury as
to the elements of § 53-202k was harmless beyond a reasonable doubt.
The habeas court further concluded that the petitioner failed to demon-
strate that the outcome of her trial or appeal would have been different
even if trial counsel had requested an instruction as to the elements of
§ 53-202k or objected to the court's instruction concerning § 53-202k.
*Held*:

1. The petitioner could not prevail on her claim that her trial counsel provided
ineffective assistance by neglecting to request a jury instruction regard-
ing the elements of § 53-202k and the definition of firearm in § 53a-3
(19), or by failing to object to the instruction the court gave, which did
not define firearm or instruct as to the elements of § 53-202k: the jury's
guilty verdict on the charge of attempted assault as an accessory was
predicated on the undisputed evidence the state presented that K dis-
charged a loaded handgun at J's residence, from which the jury necessar-
ily found both that the state proved each element of § 53-202k and that
the handgun K used satisfied the definition of firearm in § 53a-3 (19);
moreover, because the jury necessarily accepted the state's theory that
K had used a deadly weapon in the commission of the offense, it logically
followed that the handgun was a loaded weapon from which he dis-
charged gunshots at the residence, and, thus, the court's failure to
instruct the jury as to the elements of § 53-202k was harmless beyond
a reasonable doubt; furthermore, because of the harmlessness of the
court's failure to instruct the jury on the elements of § 53-202k, the
petitioner failed to meet her burden of proving that there was a reason-
able probability that, but for trial counsel's failure to object to the court's
instruction concerning § 53-202k, the result of the underlying criminal
proceeding would have been different.

2. This court declined to review the petitioner's unpreserved claim that she
was prejudiced by her trial counsel's failure to request that the jury be
instructed as to the definition of firearm in § 53-3 (19) because the
sentence enhancement under § 53-202k would not have applied if the
weapon K used was an assault weapon; the petitioner's claim of preju-
dice, which she conceded was raised for the first time before this court,
was distinct from her allegation before the habeas court that she was
prejudiced by trial counsel's failure to request a jury instruction as to
each element of § 53-202k or to otherwise object to the instruction the
court gave.

Argued September 9, 2021—officially released May 10, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought
to the Superior Court in the judicial district of Tolland

and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appellant (petitioner).

*Marcia A. Pillsbury*, assistant state's attorney, with whom, on the brief, were *Dawn Gallo*, state's attorney, and *Kelly A. Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Sara E. VanDeusen, appeals from the judgment of the habeas court, denying her petition for a writ of habeas corpus.[1] On appeal, the petitioner primarily claims that the habeas court improperly concluded that she failed to demonstrate that her trial counsel provided ineffective assistance by neglecting to request a jury instruction setting forth the statutory elements of General Statutes § 53-202k and, more specifically, defining the term "firearm," as used in § 53-202k and defined in General Statutes § 53a-3 (19). She additionally claims on appeal that the habeas court improperly concluded that she failed to demonstrate that her trial counsel provided ineffective assistance by neglecting to request that the court instruct the jury that § 53-202k expressly excludes "assault weapon[s]" from the term "firearm," or otherwise to object to the court's instruction as to § 53-202k. We affirm the judgment of the habeas court denying the petition.

The following facts and procedural history are relevant to the petitioner's claim. The petitioner's underlying conviction stems "from a shooting that occurred on the evening of January 10, 2009, in Torrington at the residence of J.L.,* [J.L.'s] then three year old son, A.S., and [J.L.'s] boyfriend, Gregorio Rodriguez.

"Prior to the shooting, the [petitioner] and J.L. were good friends and had several mutual acquaintances, including the [petitioner's] roommate, Carlos Casiano, as well as Alyssa Ayala and her boyfriend, Charles Knowles. At some point, however, the relationship between J.L. and Ayala became antagonistic because J.L. had a sexual encounter with Knowles in October or November, 2008. Once Ayala had learned of the encounter, she became angry with J.L. and threatened to 'fuck that bitch up for messing with [her] man . . . .'

"At the same time, the relationship between Rodriguez and Knowles also became antagonistic. Both were drug dealers, but belonged to two rival gangs. On January 9, 2009, Knowles and Rodriguez engaged in a fistfight at a local pub. As a result of the fight, Knowles suffered a broken facial bone, for which he sought treatment at a hospital the following day.

"At the hospital, Knowles was accompanied by Ayala and Casiano. While waiting at the hospital, the trio discussed going to J.L.'s and Rodriguez' residence to 'get back at them.' Ayala, however, was concerned that neither Knowles nor she herself could participate in a physical altercation.[2] Ayala then called the [petitioner] and explained to her the nature and extent of Knowles' injury.

"The [petitioner] later arrived at the hospital to pick up Ayala and Knowles. Once she had seen the extent of the injury, the [petitioner] offered to fight J.L. instead

of having Ayala fight J.L. because, according to the [petitioner], J.L.'s sexual relationships with both Rodriguez and Knowles had instigated the fight at the pub the previous night. Ayala thereafter placed several telephone calls from a private number to J.L.'s residence, trying to ascertain whether she and Rodriguez were there by pretending to be someone else looking for Rodriguez. Having nevertheless recognized Ayala as the caller, J.L. told her that Rodriguez was home and further remarked that [A.S.] was also at home.

"Alarmed by Ayala's calls, J.L. called the [petitioner] and told her that Ayala was 'trying to start problems . . . .' During that conversation, J.L. threatened to 'kick [Ayala's] ass' and stated that she had sexual intercourse with Knowles throughout the entire time that Ayala had been dating him. In addition, J.L. gave the [petitioner] her new address, adding that Ayala could come over if she wanted to have an altercation.

"The [petitioner] then called Ayala and relayed to her the essence of her conversation with J.L. and, once again, volunteered to fight in Ayala's stead. Knowles overheard J.L.'s challenge and became 'mad' because J.L. had threatened to beat up his pregnant girlfriend. Knowles then called Casiano and asked Casiano to fight Rodriguez. Knowles also told Casiano to come get him at Ayala's residence and to bring the [petitioner] because 'she was the only one [who] knew where [J.L.] lived . . . .' Knowles then mentioned to Casiano that he had a gun. After the call to Casiano, Knowles also called his mother in New York and told her that he would be coming back there.

"Thereafter, Casiano and the [petitioner] picked up Knowles in a green van. Before leaving Ayala's residence, Knowles retrieved a handgun[3] from a shoe box in a bedroom closet. The trio then headed to J.L.'s residence. On the way to J.L.'s residence, the [petitioner] saw that Knowles was armed. Despite her knowledge of the handgun, after pulling up in front of J.L.'s residence, the [petitioner] called J.L. from her cellular phone and asked her and Rodriguez to come out of the house. Sensing trouble, J.L. refused to come out, hung up the telephone, and turned off the lights in the living room, which was facing the street.

"Once the [petitioner], Casiano, and Knowles realized that J.L. and Rodriguez were not going to come out, Knowles opened the van's door and fired his handgun at the residence. Inside of the residence, Rodriguez and J.L.'s friend, Casey Delmonte, who were watching television in a back bedroom, heard 'a very loud noise . . . .' When Delmonte went to the living room window to investigate, she saw the taillights of a 'bigger vehicle' as it drove away. At that time, none of them realized that they had heard the sound of gunshots.

"Later that evening, however, J.L., Rodriguez, and

Delmonte discovered that a bullet had pierced the front door window and lodged in a wall separating the entryway and the bedroom where Rodriguez, Delmonte, and A.S. had been watching television at the time of the shooting. The bullet had struck the wall at four feet, two inches above the floor. In addition, it was later discovered that a second bullet had struck a supporting pillar on the front porch of the residence.

"Following the shooting, Knowles directed Casiano and the [petitioner] to dispose of the gun by delivering it to someone in Waterbury. Thereafter, Knowles and Casiano went into hiding, ultimately ending up in New York. Ayala later also joined Knowles in New York. The [petitioner] did not leave Torrington following the shooting. When the [petitioner] was later interviewed by the police in connection with the shooting investigation, she denied any knowledge of the shooting and stated that she could not recall her whereabouts on the night in question. The [petitioner] further stated that she did not know Knowles and that she had not called J.L. on the day of the shooting.

"As a result of the investigation, the [petitioner] was arrested on August 5, 2009, and charged with one count of conspiracy to commit assault in the first degree in violation of [General Statutes] §§ 53a-48 and 53a-59 (a) (1); one count of being an accessory to an attempt to commit assault in the first degree in violation of [General Statutes] §§ 53a-59 (a) (1), 53a-49 (a) (2) and 53a-8; and one count of risk of injury to a child in violation of [General Statutes] § 53-21 (a) (1). In addition, the state sought to enhance the [petitioner's] sentence on all counts pursuant to § 53-202k.[4]

"Following a trial, the jury found the [petitioner] guilty as charged on all counts. Thereafter, the court sentenced the [petitioner] to ten years incarceration, execution suspended after five years, followed by five years enhancement, pursuant to § 53-202k, on each count, to run concurrently, for a total effective sentence of fifteen years incarceration, suspended after ten years, followed by five years probation." (Footnotes added; footnote in original; footnotes omitted.) *State* v. *VanDeusen*, 160 Conn. App. 815, 818–21, 126 A.3d 604, cert. denied, 320 Conn. 903, 127 A.3d 187 (2015).

On direct appeal, the petitioner claimed "that (1) the evidence was insufficient to support her conviction of conspiracy and attempt to commit assault in the first degree, and of risk of injury to a child, (2) the trial court improperly instructed the jury on the elements of conspiracy and attempt to commit assault in the first degree, and (3) the court improperly enhanced her sentence on the counts of conspiracy to commit assault in the first degree and risk of injury to a child pursuant to § 53-202k." Id., 817. This court affirmed the judgment of the trial court with respect to the first and the second claims but agreed with the petitioner that the trial court

improperly enhanced her sentence on the counts of conspiracy to commit assault in the first degree and risk of injury to a child. Id. Accordingly, this court affirmed the trial court's judgment in part, reversed it in part, and remanded the case to the trial court with direction to vacate the sentence enhancements imposed on counts one and three. See id., 850. Because, however, this court's decision did not alter the petitioner's total effective sentence[5] and there was no evidence that the decision would alter the trial court's original sentencing intent, this court concluded that the petitioner need not be resentenced. See id., 850–51 n.22.

On March 10, 2016, the petitioner filed a petition for a writ of habeas corpus. In the operative, amended petition dated September 25, 2018, the petitioner raised four claims. First, she alleged a freestanding sixth amendment claim[6] that her sentence on her conviction of attempt to commit assault in the first degree improperly was enhanced pursuant to § 53-202k because the jury was not instructed on one or more of the elements of § 53-202k, including the legal definition of "firearm,"[7] as defined in § 53a-3.[8] See *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (defendant's sixth amendment right to jury trial requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *State* v. *Velasco*, 253 Conn. 210, 225–26, 228, 751 A.2d 800 (2000) (holding pre-*Apprendi* that legislature had not intended to eliminate jury's role as fact finder during application of § 53-202k). Second, she alleged that her trial counsel provided ineffective assistance by failing to request a jury instruction regarding the statutory elements of § 53-202k, including the definition of "firearm" as set forth in § 53a-3 (19). See General Statutes § 53-202k. Third, she asserted that her appellate counsel provided ineffective assistance by failing to raise a claim in her direct appeal that the trial court had failed to instruct the jury on the elements of § 53-202k. Finally, she alleged that the errors referenced in the prior counts of her petition violated her right to due process of law.

The habeas court conducted a trial on the petition for a writ of habeas corpus on November 19, 2019. In a memorandum of decision dated December 17, 2019, the court denied the petition. The court stated that the jury had found the petitioner guilty of attempted assault in the first degree as an accessory on the premise that a coparticipant had used a firearm in the commission of the offense. The court also noted that the trial court had submitted to the jury an interrogatory concerning § 53-202k, which inquired whether the state had proven beyond a reasonable doubt that "the defendant or another participant used, or was armed with and threatened the use of, or displayed a firearm," and had instructed the jury to answer the interrogatory *only* if

it found the defendant guilty of attempted assault in the first degree.[9] The jury answered the interrogatory affirmatively.[10] Thus, because the jury had found the petitioner guilty of attempted assault in the first degree as an accessory, predicated on the theory that a coparticipant had used a deadly weapon in the commission of the offense, and had answered the corresponding interrogatory affirmatively, the habeas court concluded that the jury unanimously had determined that the state had proven, beyond a reasonable doubt, each element of § 53-202k—including that a coparticipant had used a "firearm" in the commission of the attempted assault. Therefore, the habeas court, citing *State* v. *Beall*, 61 Conn. App. 430, 435, 769 A.2d 708, cert. denied, 255 Conn. 954, 772 A.2d 152 (2001),[11] determined that any error caused by the trial court's failure to instruct the jury as to the elements of § 53-202k was harmless beyond a reasonable doubt and, accordingly, the petitioner had failed to meet her burden as to her first claim.

Moreover, the court concluded that the petitioner had failed to meet her burden as to her second and third claims. In light of the court's determination that any alleged error caused by the trial court's failure to instruct the jury as to the elements of § 53-202k was harmless beyond a reasonable doubt, the court concluded that the petitioner had failed to demonstrate that, even if her trial counsel had requested an instruction as to the elements of § 53-202k or objected to the court's instruction concerning § 53-202k or if her appellate counsel had raised the issue on appeal, the outcome of the trial or appeal would have been different. See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 30, 188 A.3d 1 (2018), cert. denied, U.S. , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019). The court also concluded that, because the petitioner's due process claim was "predicated on" the success of her other claims, she likewise had failed to meet her burden as to that claim. This appeal followed.[12] Additional procedural history will be set forth as needed.

We begin by setting forth the principles of law that govern claims of ineffective assistance of counsel, as well as our standard of review for a challenge to the denial of a petition for a writ of habeas corpus, both of which are well settled. "A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so seri-

ous that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is reasonably likely the result would have been different. . . . This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. . . . The likelihood of a different result must be substantial, not just conceivable." (Internal quotation marks omitted.) *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 40. "In a habeas proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 198 Conn. App. 345, 354, 233 A.3d 1106, cert. denied, 335 Conn. 948, 238 A.3d 18 (2020). "Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Antwon W.* v. *Commissioner of Correction*, 172 Conn. App. 843, 849–50, 163 A.3d 1223, cert. denied, 326 Conn. 909, 164 A.3d 680 (2017).

On appeal, "[a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's [right to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of th[e] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 469–70, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, 571 U.S. 1045, 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

I

We first address the petitioner's principal claim on appeal that the habeas court improperly concluded that she failed to demonstrate that her trial counsel provided

ineffective assistance by neglecting to request a jury instruction setting forth the statutory elements of § 53-202k and, specifically, defining the term "firearm," as set forth in § 53a-3 (19); see General Statutes § 53-202k; or otherwise object to the instruction that the court provided regarding § 53-202k because it failed to set forth the elements of § 53-202k by failing to define the term "firearm," as set forth in § 53a-3 (19).[13] Because we conclude that, even if the trial court had instructed the jury as to the definition of the term "firearm," as set forth in § 53a-3 (19), and the other statutory elements of § 53-202k, a reasonable probability does not exist that the result of the underlying criminal proceeding would have been different, we reject this claim.

The following additional procedural history is relevant to our resolution of the petitioner's claim. At the conclusion of the trial, the court held a charge conference on the record. During the conference, the petitioner's trial counsel did not object that the proposed jury instruction concerning § 53-202k improperly failed to delineate each statutory element and state that the prosecution was required to prove each element of § 53-202k beyond a reasonable doubt or request that a jury instruction be provided as to the statutory elements of § 53-202k. The petitioner's trial counsel did not request specifically that the jury be instructed as to the legal definition of "firearm" under § 53-202k, as set forth in § 53a-3 (19), or object to the proposed jury instruction because it failed to provide the definition of "firearm." See General Statutes §§ 53-202k and 53a-3 (19). Subsequently, the court delivered its instructions to the jury. The court instructed the jury, "[i]n count two, in the event that you do find the [petitioner] guilty [of attempted assault in the first degree], you have to answer the interrogatory that's going to be provided to you; it is written, it is self-explanatory, your answer or response to the interrogatory has to be unanimous." The court provided no further instruction as to the sentence enhancement contained in § 53-202k and did not instruct the jury as to the definition of the term "firearm."

In connection with the attempted assault charge, which required the jury to find that the state had proven beyond a reasonable doubt that the petitioner or a coparticipant attempted to cause serious physical injury to another person "by means of a deadly weapon or a dangerous instrument"; General Statutes § 53a-59 (a) (1); see also General Statutes §§ 53a-49 (a) (2) and 53a-8; the court instructed the jury as to the definition of "deadly weapon," as set forth in § 53a-3 (6). Section § 53a-3 defines "deadly weapon" to mean "*any weapon, whether loaded or unloaded, from which a shot may be discharged*, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles." (Emphasis added.) General Statutes § 53a-3 (6). Thus, in accordance with §§ 53a-3 and 53a-59, the court instructed the jury in relevant part: "The statute defining [assault

in the first degree, § 53a-59] reads in pertinent part as follows: A person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such a person or to a third person by means of a *deadly weapon* or a dangerous instrument. . . . The third [statutory] element [of § 53a-59 (a) (1)] is that the defendant attempted to cause [serious physical] injury by means of a deadly weapon." (Emphasis added.) The court also stated: "Deadly weapon is defined by [§ 53a-3 (6)] as *any weapon, whether loaded or unloaded, from which a shot may be discharged.* If the weapon is a firearm, it may be unloaded, but it must be in such condition that a shot may be discharged from it. . . . If the weapon is unloaded, but in working order, it is a deadly weapon." (Emphasis added.)

After it delivered the jury charge, the court asked the parties whether they had any objection with respect to the jury instructions. The petitioner's trial counsel raised no objection with respect to the court's instruction regarding the interrogatory, the court's failure to delineate or define fully the statutory elements of § 53-202k in its instruction, or the court's failure to instruct the jury as to the term "firearm," as defined in § 53a-3 (19). The petitioner's trial counsel, likewise, raised no objection as to the court's instruction concerning the definition of "deadly weapon."

"[W]hen an accused is convicted by a jury of an underlying felony, the question of whether the accused used a proscribed firearm in the commission of that felony must also be decided by the jury . . . ." *State* v. *Velasco*, supra, 253 Conn. 214. Thus, "[a] jury, and not the trial court, is required to determine whether a defendant has used a firearm in the commission of a class A, B or C felony for purposes of § 53-202k." *State* v. *Montgomery*, 254 Conn. 694, 736–37, 759 A.2d 995 (2000); see also *State* v. *Beall*, supra, 61 Conn. App. 435 (same). If, however, "there is no question that the jury's finding necessarily satisfied the two requirements of § 53-202k, the court's failure to instruct the jury regarding the elements of § 53-202k is harmless beyond a reasonable doubt."[14] *State* v. *Beall*, supra, 435; see also *State* v. *Montgomery*, supra, 737–38 (analyzing whether court's failure to instruct jury regarding statutory elements of § 53-202k was harmless). Accordingly, if we conclude that the jury's ultimate determination necessarily satisfied the statutory elements of § 53-202k; see *State* v. *Beall*, supra, 435; it is axiomatic that the petitioner has failed to meet her burden of proving that there is a reasonable probability that, but for her trial counsel's failure to object to the court's instruction concerning § 53-202k, the result of the underlying criminal proceeding would have been different. See *Small* v. *Commissioner of Correction*, supra, 286 Conn. 712–13.

In *Montgomery*, our Supreme Court concluded that a

trial court's failure to instruct the jury as to the statutory elements of § 53-202k was harmless because the jury's determination that the defendant was guilty of murder necessarily satisfied the statutory requirements of § 53-202k. See *State* v. *Montgomery*, supra, 254 Conn. 738. The defendant in *Montgomery* was convicted, following a jury trial, of murder and felony murder, arising out of an incident during which the defendant shot and killed a coworker, and was charged with using a firearm during the commission of the murder in violation of § 53-202k. Id., 696–98. The state sought a five year sentence enhancement pursuant to § 53-202k during the defendant's sentencing hearing. Id., 735–36. The court sentenced the defendant to a total term of sixty-five years of incarceration, a sixty year sentence that was enhanced by a five year term of incarceration pursuant to § 53-202k. See id., 697.

On direct appeal, the defendant claimed, inter alia, that the trial court improperly had failed to instruct the jury as to the statutory elements of § 53-202k and, as a result, had violated his constitutional right to due process. Id., 735. Our Supreme Court determined that, "[a]lthough [it] agree[d] with the defendant that the jury and not the trial court must make the factual determinations required under § 53-202k . . . under the circumstances of th[e] case, the trial court's failure to instruct the jury regarding the elements of § 53-202k was harmless." Id. Specifically, our Supreme Court stated, "[t]here [wa]s no dispute that the jury was not expressly asked to" determine whether the defendant had used a firearm in the commission of a class A, B or C felony for the purposes of § 53-202k. Id., 737. Nonetheless, "the jury necessarily found that the defendant had committed a class A felony by virtue of finding [the defendant] guilty of . . . a felony, namely, murder. . . . With respect to the second element of § 53-202k, the defendant *did not contest* the fact, established by incontrovertible evidence, that the victim had been shot repeatedly in the head with a firearm and had died as a result of wounds caused by that firearm. Indeed, in closing argument, the defendant acknowledged that the victim had been brutally murdered. The defendant sought to convince the jury, rather, that the evidence was insufficient to establish beyond a reasonable doubt that *he* was the shooter." (Citation omitted; emphasis altered; internal quotation marks omitted.) Id., 738. Thus, "[b]ecause the defendant did not dispute the fact that the victim's fatal wounds were inflicted by a firearm, and because the jury found beyond a reasonable doubt that the defendant was guilty of the victim's murder, a class A felony, the trial court's failure to instruct the jury regarding the elements of § 53-202k was harmless beyond a reasonable doubt." Id.

In *Beall*, the defendant was convicted, following a jury trial, of assault in the first degree arising out of an incident during which the defendant had shot and

caused serious injury to a victim. See *State* v. *Beall*, supra, 61 Conn. App. 432–34. The defendant was charged separately in a part B information with using a firearm in the commission of a felony in violation of § 53-202k. See id., 433. The court ultimately sentenced the defendant to a term of eighteen years of incarceration, suspended after thirteen years, with three years of probation. See id. His sentence was enhanced by a five year nonsuspendable term of incarceration pursuant to § 53-202k. Id.

On direct appeal, the defendant claimed, inter alia, that the trial court improperly had failed to submit to the jury the question of whether he had used a firearm in the commission of a class A, B or C felony in accordance with § 53-202k. Id., 435. This court rejected the defendant's claim and determined that the court's failure to instruct the jury as to the elements of § 53-202k was harmless beyond a reasonable doubt. See id., 436. This court specifically determined that "[t]he jury's finding that the defendant was guilty of having committed assault in the first degree, a class B felony, necessarily satisfied the first requirement [of § 53-202k—namely, that he had committed a class A, B or C felony]. The use of a firearm [however] is not always an element of the crime of assault in the first degree, and the information . . . did not expressly state that the 'deadly weapon' used to cause the serious physical injury was a firearm. The evidence presented at trial was that the victim was shot in the chest and paralyzed below the site of the wound. *The defendant did not dispute that evidence* [*at trial*]. His defense was that he was not the shooter. The sole evidence, therefore, of the assault in the first degree, was that it was committed with a firearm. The element found by the court rather than by the jury, i.e., that the class B felony was committed *with a firearm*, was uncontested [at trial] and supported by overwhelming evidence; the court's failure to instruct on that element of § 53-202k therefore constituted harmless error. . . . [B]ecause the defendant . . . did not dispute that the victim suffered serious physical injury by means of being shot by a firearm, and because the jury found beyond a reasonable doubt that the defendant was guilty of assault in the first degree, a class B felony, the court's failure to instruct the jury regarding the elements of § 53-202k was harmless beyond a reasonable doubt." (Citation omitted; emphasis added.) Id., 435–36.

Guided by *State* v. *Montgomery*, supra, 254 Conn. 738, and *State* v. *Beall*, supra, 61 Conn. App. 435–36, we conclude in the present case that the jury's determination that the petitioner was guilty of attempt to commit assault in the first degree as an accessory, in light of the state's theory of the case and the evidence presented at trial, necessarily satisfied each statutory requirement of § 53-202k, including that a coparticipant used a "firearm," as defined in § 53a-3, in that attempted

assault. There is no question that the jury found the petitioner guilty of a class B felony—attempted assault in the first degree as an accessory in violation of §§ 53a-59 (a) (1), 53a-49 (a) (2) and 53a-8—beyond a reasonable doubt. See *State* v. *VanDeusen*, supra, 160 Conn. App. 817; see also General Statutes § 53a-59. Accordingly, the jury's finding satisfied the first requirement of § 53-202k—namely, that the petitioner had committed a class A, B or C felony. See *State* v. *Beall*, supra, 435.

With respect to the second element of § 53-202k— that the petitioner or a coparticipant, during the commission of the felony, used, was armed with and threatened to use, or displayed a "firearm," as defined in § 53a-3; see General Statutes § 53-202k; we note that "the use of a firearm is not an element of the crime of [attempt to commit assault in the first degree] . . . [so] the jury lawfully could have returned a finding of guilty on the [attempt to commit assault] charge without also having found that the [petitioner or a coparticipant] had used a firearm in the commission of that crime." (Citation omitted.) *State* v. *Montgomery*, supra, 254 Conn. 737. Accordingly, we look to the circumstances of the case to determine whether the court's failure to instruct the jury as to the definition of the term "firearm" was harmless. See id., 738.

To start, we note, as we have stated previously in this opinion, that § 53-202k employs the statutory definition of "firearm," set forth in § 53a-3 (19). See General Statutes § 53-202k. Section 53a-3 (19) defines "firearm" to mean "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19). We also note that, by finding the petitioner guilty of attempted assault in the first degree as an accessory, the jury necessarily determined that the state had proven each element of §§ 53a-59 (a) (1), 53a-49 (a) (2) and 53a-8 beyond a reasonable doubt, including that a coparticipant used a "deadly weapon" in the commission of the attempted assault. Section 53a-3 defines "deadly weapon" to include "any weapon, whether unloaded or loaded, from which a shot may be discharged . . . ." General Statutes § 53a-3 (6).

At trial, the state presented evidence that Knowles, using a handgun, fired gunshots from the van at the residence of J.L. See *State* v. *VanDeusen*, supra, 160 Conn. App. 820. Specifically, the state elicited testimony from Ayala that she had observed Knowles retrieve a black gun from a shoe box, enter the van with it, and that, later that night, Knowles told her they had gone to J.L.'s house and he had fired gunshots from the van toward J.L.'s residence. The state elicited testimony from Delmonte that, from inside of J.L.'s residence, she had heard a "very loud noise" and subsequently observed the taillights of a vehicle as it drove away.

Further, the state elicited testimony from J.L. and Rodriguez that, later that evening, J.L., Rodriguez, and Delmonte discovered bullets that had pierced a window and a supporting pillar of J.L.'s residence. The state additionally elicited testimony from a responding police officer that he observed what appeared to be a bullet hole that had pierced the front of J.L.'s residence and recovered bullets from the scene. The state did not present evidence that any other type of deadly weapon was used during the commission of the offense. The sole evidence, therefore, that the state presented to support the charge of attempted assault in the first degree, of which the jury found the petitioner to be an accessory, was that it was committed with a handgun—specifically, that Knowles discharged a loaded handgun at J.L.'s residence. See *State* v. *Beall*, supra, 61 Conn. App. 436.

The petitioner did not contest the state's theory at trial that Knowles used a handgun in the commission of the offense. By contrast, a thorough review of the trial transcripts reveals that the petitioner's theory of her defense was that she either was uninvolved entirely with, or, at most, merely was an uninvolved witness to, the commission of the offense. Specifically, the petitioner sought to convince the jury that the state had failed to present reliable witnesses that could attest to her alleged involvement in the shooting and that the witnesses that the state *did* call were unreliable "lowli[ves]" whose testimony was not credible. On several occasions during closing argument, in fact, the petitioner's trial counsel acknowledged that an individual *had* fired shots from a "gun" at J.L.'s home; the petitioner's trial counsel argued, however, that the *petitioner* neither had possessed nor had used the gun on the night of January 10, 2009.

Thus, we conclude that the jury's guilty verdict as to the charge of attempted assault—and, consequently, its determination that a coparticipant used a deadly weapon in the commission of the attempted assault—was predicated on the evidence that the state presented as to the only weapon used during the commission of the offense: the handgun. The jury necessarily accepted the state's theory, undisputed by the petitioner at trial, that Knowles used a "deadly weapon," the handgun, in the commission of the attempted assault. It logically follows, in light of the undisputed evidence that the state presented at trial, that the jury found that the handgun was a "loaded" weapon from which Knowles "discharged" a "shot" at the residence of J.L. Thus, the jury necessarily determined that the handgun satisfied the statutory definition of a "firearm" in § 53a-3 (19)—a "sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other *weapon*, whether *loaded* or unloaded *from which a shot may be discharged* . . . ." (Emphasis added.) General Statutes § 53a-3 (19). We, therefore, conclude that the jury necessarily found that the state

had proven each statutory element of § 53-202k beyond a reasonable doubt and, accordingly, that the court's failure to instruct the jury as to the elements of § 53-202k was harmless beyond a reasonable doubt. See *State* v. *Beall*, supra, 61 Conn. App. 435–36.

Because we conclude that the court's failure to provide the jury instruction concerning the statutory elements of § 53-202k was harmless beyond a reasonable doubt, it is axiomatic that the petitioner has failed to meet her burden of proving that there is a reasonable probability that, but for her trial counsel's failure to object to the court's instruction concerning § 53-202k, the result of the underlying criminal proceeding would have been different. See *Small* v. *Commissioner of Correction*, supra, 286 Conn. 712–13. Accordingly, the petitioner's claim fails.[15]

## II

The petitioner additionally claims on appeal that the habeas court improperly concluded that she failed to demonstrate that her trial counsel provided ineffective assistance by neglecting to request that the court instruct the jury, or otherwise object to the court's instruction concerning § 53-202k, that (1) § 53-202k expressly excludes "assault weapon[s]" from the term "firearm"; see General Statutes § 53-202k; see also footnote 9 of this opinion; and (2) the state was obligated to prove beyond a reasonable doubt that the weapon used on January 10, 2009, was not an "assault weapon."[16] She claims that her trial counsel's failure to request such an instruction caused her prejudice because, if the weapon at issue was an "assault weapon," the sentence enhancement contained in § 53-202k would not have applied. As appellate counsel for the respondent, the Commissioner of Correction, conceded at oral argument before this court, the sentence enhancement contained in § 53-202k would not have applied if the weapon used during the shooting was an "assault weapon." Appellate counsel for the respondent also conceded at oral argument before this court that the state presented no evidence during the petitioner's underlying criminal trial to distinguish whether the weapon used during the shooting was a "firearm" or an "assault weapon."[17] Because we conclude that this claim was not adequately preserved for appellate review, we decline to review the petitioner's claim.

The following additional procedural history is relevant to our resolution of the petitioner's claim. In her petition for a writ of habeas corpus and in her brief to the habeas court in support of her petition, the petitioner claimed, inter alia, that her trial counsel had provided ineffective assistance by failing to request a jury instruction regarding each statutory element of § 53-202k, including the definition of "firearm" as set forth in § 53a-3 (19), or otherwise objecting to the instruction that the court gave. In connection with her

claim, the petitioner alleged that her trial counsel's deficient performance prejudiced her because, as a result of her trial counsel's deficient performance, a reasonable "possibility" existed that the jury misunderstood what it was required to consider to determine whether the sentence enhancement contained in § 53-202k applied.

During the habeas trial, the petitioner reiterated the claim that she had raised in her petition and corresponding brief—that her trial counsel provided ineffective assistance and that counsel's allegedly deficient performance prejudiced her because, as a result of her trial counsel's failure to request a jury instruction regarding the elements of § 53-202k or otherwise object to the instruction that the court gave, a reasonable probability existed that the jury may have misunderstood what it was required to find for the defendant's sentence to be enhanced pursuant to § 53-202k. Specifically, the petitioner's habeas counsel argued, "[t]he only plausible explanation [as to how the jury concluded that the state had proven each element of § 53-202k] is that the jury *must have guessed*" what it must find for the sentence enhancement contained in § 53-202k to apply. (Emphasis added.) At no point in her petition for a writ of habeas corpus, in her brief in support of her petition, or during the habeas trial did the petitioner assert that she was prejudiced by her trial counsel's failure to request the jury instruction because, if the weapon that was used during the shooting was an assault weapon, the sentence enhancement contained in § 53-202k would not have applied.

On appeal to this court, the petitioner maintains—as she did before the habeas court—that her trial counsel provided ineffective assistance. She appears to claim on appeal, however, that her trial counsel's failure to request that the jury be instructed as to the definition of "firearm" under § 53-202k prejudiced her because, if what was used on January 10, 2009, was an "assault weapon," the sentence enhancement contained in § 53-202k would not have applied. The petitioner's appellate counsel conceded at oral argument before this court that the petitioner advances this specific legal theory of prejudice for the first time on appeal.

"It is well settled that this court [and our Supreme Court] shall not be bound to consider a claim unless it was *distinctly* raised at the trial . . . ." (Emphasis added; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 177, 982 A.2d 620 (2009). "A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court." (Internal quotation marks omitted.) *Giattino* v. *Commissioner of Correction*, 169 Conn. App. 566, 580, 152 A.3d 558 (2016). Indeed, "[w]e do not entertain claims not raised before the habeas court but raised for the first time on appeal. . . . The purpose of the [petition] is to put the [respondent] on notice

of the claims made, to limit the issues to be decided, and to prevent surprise." (Internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 820–21 n.3, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017). "[P]rinciples of fairness dictate that both the opposing party and the [habeas] court are entitled to have proper notice of a claim. . . . Our review of a claim not distinctly raised [before] the [habeas] court violates that right to notice. . . . [A]ppellate review of newly articulated claim[s] not raised before the habeas court would amount to an ambuscade of the [habeas] judge . . . ." (Citation omitted; internal quotation marks omitted.) *Eubanks* v. *Commissioner of Correction*, 329 Conn. 584, 597–98, 188 A.3d 702 (2018); see also *Crawford* v. *Commissioner of Correction*, supra, 177 ("[f]or this court to . . . consider a claim on the basis of a specific legal ground not raised [before the habeas court] would amount to trial by ambuscade, unfair both to the [habeas court] and to the opposing party" (internal quotation marks omitted)). Accordingly, "our review is limited to matters in the record, [and] we will not address issues not decided by the [habeas] court." (Internal quotation marks omitted.) *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 640, 930 A.2d 58, cert. denied, 284 Conn. 939, 937 A.2d 695 (2007).

In the present case, a thorough review of the record—including the petitioner's petition for a writ of habeas corpus, her brief to the habeas court in support of her petition, and the transcript from the habeas trial—reveals, as the petitioner conceded, that she did not raise before the habeas court her distinct claim that her trial counsel's failure to request a jury instruction that § 53-202k excludes "assault weapon[s]" from the term "firearm" prejudiced her because, if the weapon at issue was an "assault weapon," the sentence enhancement contained in § 53-202k would not have applied. She alleged before the habeas court that she was prejudiced by her trial counsel's allegedly deficient performance because, as a result of her trial counsel's failure to request a jury instruction as to each element of § 53-202k or otherwise object to the instruction that the court gave, a reasonable probability existed that the jury misunderstood the law to be applied. The petitioner's claim on appeal, thus, is predicated on a distinct allegation of "prejudice" that she never presented before the habeas court—one on which the habeas court did not rule. Accordingly, we conclude that this distinct claim was not adequately preserved for appellate review, and, because our consideration of "a claim on the basis of a specific legal ground not raised [before the habeas court] would amount to trial by ambuscade"; (internal quotation marks omitted) *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 177; we decline to review the claim.[18]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted the petitioner certification to appeal.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] "Ayala was unable to fight because, at that time, she was pregnant with Knowles' child." *State* v. *VanDeusen*, 160 Conn. App. 815, 818 n.2, 126 A.3d 604, cert. denied, 320 Conn. 903, 127 A.3d 187 (2015).

[3] At trial, Alaya testified that the weapon that Knowles had retrieved from the shoe box was a "black" handgun.

[4] General Statutes § 53-202k, titled "Commission of a class A, B or C felony with a firearm: Five-year nonsuspendable sentence," provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in [§] 53a-3, except an assault weapon, as defined in [§] 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[5] The sentence enhancement on the petitioner's conviction of attempted assault in the first degree as an accessory was not challenged on direct appeal. See *State* v. *VanDeusen*, supra, 160 Conn. App. 842.

[6] "In habeas corpus proceedings, courts often describe constitutional claims that are not tethered to a petitioner's sixth amendment right to counsel as 'freestanding.' " *McCarthy* v. *Commissioner of Correction*, 192 Conn. App. 797, 810 n.8, 218 A.3d 638 (2019).

[7] Although the petitioner's operative petition for a writ of habeas corpus and her corresponding brief to the habeas court in support of her petition set forth this claim in somewhat vague terms, her habeas counsel clarified during the habeas trial that she specifically contended that the court should have instructed the jury as to the statutory definition of "firearm," as set forth in § 53a-3 (19). During closing argument, the petitioner's counsel specifically argued to the habeas court, "if you look at the [jury] instructions as a whole, the [trial court] never actually instruct[ed] [the jury as to] *what a firearm is*, per se. . . . [The jury instructions did not] list . . . all [of] the different types of firearms that could be used [that would constitute a "firearm" under § 53a-3], as is typically done in jury instructions." (Emphasis added.)

[8] Section 53-202k provides for a five year sentence enhancement to "[a]ny person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses *any firearm, as defined in [§] 53a-3*, except an assault weapon . . . ." (Emphasis added.) The term "firearm," as defined in § 53a-3, includes "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19).

[9] The trial court submitted to the jury three interrogatories, each corresponding to a separate charged offense. In its jury charge, the court instructed the jury to answer each interrogatory *only* "in the event that [the jury] . . . [found] the [petitioner] guilty" of the respective offense.

The interrogatory that corresponded to the second charge—attempted assault in the first degree as an accessory in violation of §§ 53a-59 (a) (1), 53a-49 (a) (2), and 53a-8—specifically provided in relevant part:

"You will answer the following interrogatory if, but only if, you have found the [petitioner] guilty as an accessory to attempt to commit assault in the first degree as charged in count two. If you have found [her] not guilty of that charge, do not answer it.

"This submission in no way suggests what your verdict should be.

"If you reach the following interrogatory, your conclusion must be unanimous. . . .

"Has the state proven to all of you unanimously beyond a reasonable doubt, that the [petitioner] or another participant used, or was armed with and threatened the use of, or displayed a firearm?"

[10] An "X" was marked next to the word, "yes," on the interrogatory form, and the jury foreperson signed the bottom of the form. After the jury returned a guilty verdict on each count, the court polled each juror to ask whether the state had proven, unanimously and beyond a reasonable doubt, that the petitioner or another participant in the commission of the offense had used, was armed with or threatened the use of, or displayed a firearm. Each juror

answered affirmatively.

[11] As we discussed in more detail in part I of this opinion, in *State* v. *Beall*, supra, 61 Conn. App. 435, this court stated, in reliance on our Supreme Court's decision in *State* v. *Montgomery*, 254 Conn. 694, 737–38, 759 A.2d 995 (2000), that, "[if] there is no question that the jury's finding necessarily satisfied the two requirements of § 53-202k, the court's failure to instruct the jury regarding the elements of § 53-202k is harmless beyond a reasonable doubt."

[12] On appeal, the petitioner does not challenge the habeas court's conclusion that she failed to demonstrate that her appellate counsel provided ineffective assistance.

[13] We note that it is difficult to ascertain the petitioner's precise claim from reviewing the record below and the petitioner's principal appellate brief. Nonetheless, we conclude that the petitioner articulated this claim of ineffective assistance of trial counsel to the habeas court and, once again, raises this claim on appeal to this court.

To the extent that the petitioner contends that the trial court improperly provided the elements of § 53-202k to the jury by way of *written* interrogatory, instead of *orally* instructing the jury as to the elements of § 53-202k, her reliance on this argument is misplaced. First, her reasoning presumes that the interrogatory that the court provided to the jury; see footnote 9 to this opinion; set forth each statutory element of § 53-202k. The interrogatory, however, failed to define fully the statutory elements of § 53-202k. See General Statutes § 53-202k. As we explain herein in more detail, despite the fact that the interrogatory was deficient because it failed to define fully the statutory elements of § 53-202k, any error was nonetheless harmless because the jury necessarily found that the state had proven each statutory element of § 53-202k beyond a reasonable doubt.

[14] In her principal appellate brief, the petitioner appears to contend that the court's failure to provide a jury instruction concerning the statutory elements of § 53-202k is not subject to harmless error analysis. In support of her contention, the petitioner points us to the decision of the United States Court of Appeals for the Ninth Circuit in *United States* v. *Becerra*, 939 F.3d 995 (9th Cir. 2019), in which the court stated that a trial court's "failure to provide any oral instructions to the jurors is an error that as a practical matter *precludes a harmless error analysis* . . . ." (Emphasis added; internal quotation marks omitted.) Id., 1004; see also *Guam* v. *Marquez*, 963 F.2d 1311, 1316 (9th Cir. 1992) (same).

To adopt such a rule, however, would run afoul of the binding precedent of our Supreme Court; see *State* v. *Montgomery*, supra, 254 Conn. 737 (determining that trial court's failure to provide jury instruction concerning elements of § 53-202k was *harmless* in light of fact that jury's ultimate finding that defendant was guilty of underlying felony offense necessarily satisfied all statutory elements of § 53-202k); and would require us to overturn a decision of another panel of this court. See *State* v. *Beall*, supra, 61 Conn. App. 435 n.6 ("The defendant argues that the court's failure to instruct the jury on the requirements of § 53-202k is not amenable to harmless error analysis . . . . *We see no merit in his argument that this error requires automatic reversal and can never be found harmless.*" (Emphasis added.)). "[I]t is not the province of this panel to disregard binding authority of our Supreme Court or to overturn a decision of another panel of this court." *State* v. *Bouvier*, 209 Conn. App. 9, 43 n.21, 267 A.3d 211 (2021), cert. denied, 341 Conn. 903, 269 A.3d 789 (2022). Accordingly, we decline to do so.

[15] Because we determine on the basis of our plenary review that the petitioner failed to satisfy her burden under the prejudice prong of *Strickland*, it is unnecessary for us to determine whether the petitioner satisfied the performance prong. See *Jordan* v. *Commissioner of Correction*, 197 Conn. App. 822, 831 n.9, 234 A.3d 78 (2020), aff'd, 341 Conn. 279, 267 A.3d 120 (2021).

[16] General Statutes § 53-202j imposes a harsher penalty—an eight year, nonsuspendable sentence—on "[a]ny person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses an *assault weapon*, as defined in [General Statutes §] 53-202a . . . ." (Emphasis added.)

[17] At oral argument before this court, appellate counsel for the respondent also conceded that the projectiles that were discovered in or around J.L.'s home could have been discharged from an assault weapon, that some assault weapons are handguns, and that a weapon described simply as a "black handgun" could have been an assault weapon.

[18] We note that review of the petitioner's claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), is not available in these circumstances. "*Golding* review is not available for [a] petitioner's unpreserved ineffective assistance of counsel claim [if] that claim does not arise out of the actions or omissions of the habeas court itself. . . . *Golding* review is available in a habeas appeal *only* for claims that challenge the actions of the habeas court." (Emphasis added.) *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 787, 114 A.3d 925 (2015). In the present case, "[t]he petitioner's unpreserved ineffective assistance claim challenges [her] trial attorney's allegedly [ineffective assistance] at [her] criminal trial. Thus, the basis for the petitioner's ineffective assistance claim arose during [her] criminal trial and should have been presented to the habeas court as an additional basis for granting the writ of habeas corpus." Id. Accordingly, "*Golding* review is not available for the petitioner's unpreserved ineffective assistance of counsel claim because that claim does not arise out of the actions or omissions of the habeas court itself." Id.